# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                        No. CR 01-697 BB

VICTOR VEGA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of the Government's motion for reconsideration (Doc. 29). The Government asks the Court to reconsider its earlier order suppressing evidence discovered in the vehicle Defendant was driving, and requests an evidentiary hearing concerning the voluntariness of Defendant's consent to search the vehicle. The Court has considered the submissions of the parties and the applicable law, and will deny the motion for reconsideration.

In the Court's previous opinion in this case, the Court found that the continued detention of Defendant became unconstitutional once the questioning shifted from the original purpose of the stop, which had been satisfied, and from the issue of Defendant's authorization to drive the vehicle, as to which there might have been grounds to continue inquiry. *See, e.g., United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997) (either consent or reasonable suspicion is necessary to continue questioning driver concerning presence of illegal items in vehicle). The Government now argues that even if the continued detention was illegal, a search preceded by a Fourth Amendment violation remains valid if consent to perform the search is obtained, and that consent is voluntary under the totality of the circumstances. This is an accurate statement of the law. *See United States v. Caro*, 248 F.3d 1240, 1248 (10th Cir. 2001). However, where there has been a Fourth Amendment violation, the

Government bears a heavy burden of showing that the primary taint of the violation was purged. *Id.* There must be a sufficient attenuation or break in the causal connection between the illegal detention and the consent. *Id.* When a consensual search is preceded by a Fourth Amendment violation, the government must prove not only the voluntariness of the consent under the totality of the circumstances, but the government must also establish a break in the causal connection between the illegality and the evidence thereby obtained. *See United States v. Melendez-Garcia*, 28 F.3d 1046, 1053-54 (10th Cir. 1994). Thus, not only must the government show that the consent was voluntary in fact, but it must also demonstrate a break in the causal connection between the illegality and the consent, so that the court will be satisfied that the primary taint of the constitutional violation was purged by an act of sufficiently free will. *Id.* Although the two requirements will often overlap to a considerable degree, they address separate constitutional values and they are not always coterminous. *Id.* "While there is a sufficient overlap of the voluntariness and fruits tests that often a proper result may be reached by using either one independently, it is extremely important to understand that (i) the two tests are not identical, and (ii) consequently the evidence obtained by the purported consent should be held admissible only if it is determined that the consent was both voluntary and not an exploitation of the prior illegality." *Id.*, 28 F.3d at 1054-55.

Tenth Circuit case law has established three factors to consider in determining whether, under the totality of the circumstances, the taint of the illegal detention has been vitiated: (1) the temporal proximity of the illegal detention and consent; (2) any intervening circumstances; and (3) the purpose and flagrancy of any official misconduct. *Id.*

As to the first factor, in this case there was no break between the illegal detention and the consent given by Defendant. Following the initial cordial exchanges between Officer Johnston and Defendant, concerning the traffic violation and Defendant's travel plans, the tenor of the interview

2

suddenly shifted after Defendant's license and other documents were returned to him. Instead of indicating in some fashion that Defendant could return to his vehicle, Officer Johnston made it clear, by the tone of his voice and by emphatically stating that he had some more questions about Defendant's vehicle, that Defendant was not free to leave.[1] Then, following some questions about Defendant's girl-friend, uncle, and travel plans, Officer Johnston asked a series of rapid-fire questions concerning the presence of any drugs in the vehicle, specifying marijuana, cocaine, and methamphetamine. Immediately following Defendant's answer to the last of these questions, Officer Johnston asked if he could search the vehicle, to which Defendant replied, "Sure, go ahead." Therefore, in this case as in *Caro*, there was no lapse of time between the Fourth Amendment violation and the consent. Furthermore, there were no intervening circumstances between the violation and the initial consent, meaning the second factor weighs in Defendant's favor as well.

The Government maintains, however, that there was a significant intervening circumstance between the detention and the subsequent written consent given by Defendant, when he signed the written consent form. As the Government points out, the consent form explicitly states, in part, "I understand that I have the right to refuse the consent to the search described above and to refuse to sign this form." Under different circumstances, this statement and Defendant's assurance that he

---

[1] The facts that Defendant had been removed from his vehicle, and was essentially informed he had to answer further questions about the vehicle before he could return to the vehicle and be on his way, are the basis of this Court's determination that even though Officer Johnston returned Defendant's license and other documents to Defendant, the continued questioning following that point was not consensual. *See Elliott*, 107 F.3d at 814 (returning driver's documents is not automatic indicator that detention is at an end). The non-consensual nature of the continuing encounter is confirmed by viewing the videotape, in which it is clear from Officer Johnston's manner that Defendant was not free to leave once his papers had been returned to him. Furthermore, Officer Johnston re-confirmed this fact at the second hearing held in this case, concerning the motion for reconsideration. He testified that while he might have allowed Defendant to leave, he would not have allowed Defendant to take his vehicle with him.

could read English, and had read and understood the form, might militate in favor of a finding that he knew he had the right to refuse consent, and could constitute a sufficient intervening circumstance to purge the taint of the continuing detention. However, in this case Defendant was not presented the form until after he had already verbally agreed to allow the search.[2] Furthermore, when Officer Johnston presented the consent form to Defendant, he did not say anything about the portion of the form stating that consent could be refused. Instead, he described the form as a form that "explains what's going to be searched here." Since Defendant had already verbally agreed to allow the search, and was given no indication that he could withdraw that consent, it would have been logical for him to draw the conclusion that the portion of the form concerning the right to refuse consent did not apply to his situation. As the Tenth Circuit has pointed out, an officer's failure to inform a suspect that he can refuse consent to a search is not a prerequisite for establishing voluntary consent, but it is particularly worth noting. *Caro.* This should also be true of an officer's failure to inform a suspect that he can withdraw a consent he has already given, if the government intends to rely on the failure to withdraw the consent as evidence of voluntariness or as a sufficient intervening circumstance to purge the taint of a prior Fourth Amendment violation.

As the Tenth Circuit has held, the government bears a heavy burden to show that a consent given following a Fourth Amendment violation is truly attenuated from that violation. An intervening

---

[2]It is worth noting that there is little evidence that the initial verbal consent given by Defendant was voluntary. At the time of the initial consent, Defendant was not told he had the right to refuse consent, or that he was free to leave. *See United States v. McSwain*, 29 F.3d 558, 563 (10th Cir.1994) (although not prerequisites, in determining whether consent is voluntary when given following the return of defendant's documents, Tenth Circuit looks at such factors as whether the officer informed the defendant that he was free to leave the scene or that he could refuse to give consent). Given Officer Johnston's sudden business-like demeanor and tone of voice, and the fact that the request to search came on the heels of several questions about the presence of drugs in the vehicle, a reasonable person could easily have concluded that he did not have such a choice, and Officer Johnston confirmed he would have detained the vehicle in any event.

circumstance must be sufficient to break the chain of causation, therefore, in order to remove the taint of the violation. For example, if an officer clearly and unambiguously explains to the defendant that he is free to leave, and may refuse to consent to a search, that explanation could be considered a sufficient intervening circumstance. In this case, however, no such explanation was given before the initial verbal consent, and the possibility of withdrawing that initial consent was never mentioned to Defendant as he signed the consent form. The Court will therefore find that Defendant's act of signing the form was not a sufficient intervening circumstance, and did not attenuate the consent from the illegal detention.

The third factor to consider is the purpose and flagrancy of any official misconduct. The Court hesitates to characterize Officer Johnston's behavior as flagrant misconduct; instead, the overall impression from viewing the video of the stop, as well as Officer Johnston's courtroom testimony, is that Officer Johnston had a strong suspicion from the start that Defendant's vehicle might contain contraband, and was determined to confirm that suspicion. The following circumstances give rise to that conclusion. First, the justification for the stop, while arguably valid, was weak. As Officer Johnston pointed out in his testimony at the hearing, the failure to use a turn signal constitutes a traffic offense only if other traffic may be affected by the movement of the vehicle. NMSA § 66-7-325(A). Officer Johnston attempted to justify the stop by explaining that there was a line of three or four cars waiting to turn south onto Highway 180, and another line of six or seven cars waiting to turn left onto State Road 26, and that these cars could have proceeded with their movements had they known Defendant planned to turn onto the ramp that leads to State Road 26. However, in his report, Officer Johnston characterized the traffic at the time of the stop as "light." It is not clear to the Court that the alleged presence of that number of vehicles at the intersection fits the description provided in the report. In addition, at the first hearing Officer Johnston testified on direct examination that

there was also a vehicle exiting a driveway onto the paved road, which was affected by Defendant's movement; on cross-examination, however, he appeared to concede that Defendant would have been past this vehicle when he made his movement onto the ramp. This concession is supported by photographs of the intersection, which appear to show that if Defendant had made the sudden move to the right described by Officer Johnston, he would have been past the last driveway leading onto the paved road. In sum, while it is possible there were vehicles affected by Defendant's act of moving onto the ramp instead of continuing north on Highway 180, it is by no means certain that is true.

The Court also notes that Defendant was driving a Suburban, a large vehicle of the type that is often used by smugglers of aliens or drugs. Officer Johnston, as an experienced law enforcement officer with a canine unit in the border area, would have been aware of the fact that large vehicles are often used by smugglers, a fact which has been testified to in front of this Court by any number of law enforcement officers as support for their suspicions that a particular vehicle contained either aliens or drugs. Furthermore, Officer Johnston had knowledge that this route is one often used by smugglers of contraband; as he testified, he was privy to intelligence reports from the FBI and the DEA, to the effect that this particular route is considered by drug cartels to be a weak point through which contraband might successfully be transported. Finally, although Officer Johnston attempted to justify his continued detention of Defendant by describing Defendant as nervous, nothing in the video bears out this description. Defendant appeared calm and answered the officer's questions in a calm voice. It appears, therefore, that the motivation for Officer Johnston's initial stop, continued detention, and request to search the vehicle was simply his hunch that the vehicle contained contraband, and that he acted on that hunch in a determined manner.[3] This is not flagrant misconduct,

---

[3]By noting that the motivation for the initial stop appears to be Officer Johnston's hunch, the Court does not intimate there was a constitutional problem with the stop. The "pretextual stop" doctrine has been abrogated by the Tenth Circuit, and as discussed in the first opinion and in this

but it did in this instance cross over the line between permissible investigation and impermissible detention.

In sum, examination of the three factors set out in *Caro* and many other cases indicates there was insufficient attenuation between the illegal continued detention of Defendant and his consent to search the Suburban. The motion for reconsideration will be denied.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the Government's motion for reconsideration (Doc. 29) be, and hereby is, DENIED.

Dated this 19th day of November, 2001.

*[signature: Bruce D. Black]*
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Gregory B. Wormuth
Assistant United States Attorney

**For Defendant**:
Jose Coronado
Attorney at Law

---

opinion there was an arguable basis for the stop.